UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| MARK E. AMESBURY,<br>　　Plaintiff,<br><br>　　v.<br><br>WILLIAM SISSON, *Fire Chief,*<br>*Pawtucket Fire Department*; DAVE<br>GOLDSTEIN, *Chief Fire Marshal,*<br>*Pawtucket Fire Department*;<br>PAWTUCKET FIRE DEPARTMENT;<br>MICHAEL JOHNSON, *Lieutenant,*<br>*Pawtucket Fire Department*; CITY<br>OF PAWTUCKET; PAUL MANNING,<br>*Investigator, R.I. State Fire Marshal's*<br>*Office*; DONALD R. GREBIEN,<br>*Mayor, City of Pawtucket*; DONNA M.<br>PINTO, *Zoning and Code*<br>*Enforcement,*<br>　　Defendants. | ) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) | C.A. No. 21-cv-409-JJM-AEM |

# ORDER

Plaintiff Mark Amesbury filed a thirteen-claim complaint against the City of Pawtucket, various Pawtucket Fire Department ("PFD") employees, the Mayor ("Pawtucket Defendants"), and an individual from the State Fire Marshal's Office, alleging constitutional claims stemming from two searches of a property he owns in Pawtucket, an investigation resulting in Fire Code violations, which ended with Mr. Amesbury being charged in state court.

Defendants the City of Pawtucket, PFD, Pawtucket Mayor Donald R. Grebien, and PFD employees Dave Goldstein, Lieutenant Michael Johnson, Donna M Pinto, and Fire Chief William Sisson move for summary judgment on all claims based on

*Younger* abstention, res judicata, qualified immunity, and as a matter of law for failure to raise disputed issues of fact. ECF No. 123. Defendant Paul Manning, an investigator with the Rhode Island State Fire Marshal's Office, moves for summary judgment on the one remaining claim against him on three grounds: statutory and qualified immunity, *Younger* abstention, and res judicata. ECF No. 121. Mr. Amesbury also moves for summary judgment. ECF No. 125.

## I. BACKGROUND

Going back ten years, Mr. Amesbury has had a documented history of conflict with state and city fire employees over his compliance, or non-compliance, with state and local fire codes at the commercial building he owns at 110 Tweed Street in Pawtucket. Many of these conflicts have been the subject of his previous lawsuits that have been dismissed on statute of limitations and other grounds. The Court will briefly recount it here as it is relevant to the motions at issue in this lawsuit.

In 2015, Mr. Amesbury was issued a State Property Maintenance Code violation notice for 110 Tweed Street. ECF No. 124-1 at 29. As a result, the Pawtucket Municipal Court ordered Mr. Amesbury to install a Radio Master Box. Mr. Amesbury had a contractor, William King, install the new fire alarm radio box, and update fire alarm system as needed.

Mr. Amesbury brought his first lawsuit against the City of Pawtucket, Donald R. Grebien, William D. Viera, Sr. and Donna M. Pinto, *Amesbury v. City of Pawtucket, et al.*, 19-cv-082-JJM-LDA ("*Amesbury I*"), that challenged certain zoning violations assessed on his building and alleged that the City mistakenly cited him for

2

failing to install and then required him to install a "Radio Master Box." The City moved to dismiss that complaint under Rule 12(b)(1) of Federal Rules of Civil Procedure and the Court granted it.

Two months later, Mr. Amesbury filed his second lawsuit against the City of Pawtucket, Mayor Grebien, William D. Viera, Sr., Donna Pinto, Michael Polaceck, and Melissa C of Zoning and Code Enforcement, *Amesbury v. City of Pawtucket, et al.*, 19-cv-082-JJM-LDA ("*Amesbury 2*"). In that lawsuit, he sought to recover under 42 U.S.C. § 1983, claiming that his Fifth Amendment rights were violated in part because Pawtucket Zoning ordered him to install the "Radio Master Box" on his property. The Court then dismissed his claims as time barred without exception, and found that defendants were entitled to immunity, and dismissed his slander claim.

Mr. Amesbury filed his third lawsuit against the same defendants as *Amesbury 2*, *Amesbury v. City of Pawtucket, et al.*, C.A. No. 19-cv-651-JJM-PAS ("*Amesbury 3*"). The Court dismissed that case based on res judicata. He appealed the Court's decision, and the First Circuit affirmed. These historical conflicts set the backdrop for some of Mr. Amesbury's claims in this lawsuit.[1] Now, the Court turns to the facts that bring about this case.

In June 2021, PFD Office Manager Barbara Pacheco requested that Lt. Johnson and his engine company, Engine No. 4, go to Mr. Amesbury's building

---

[1] Unrelated to any of his claims against these Defendants but in the vein of his general complaints about PFD, Mr. Amesbury argues that some defendants are liable because he and his son Brian exchanged emails with Fire Marshal Goldstein alleging that one of his tenants, was living in unit which is zoned for only commercial use. He

3

because the Fire Connection Fee bills continued to be returned to the PFD as "undeliverable" and that PFD did not have an owner or inspection report from the box alarm company since 2018. Concerned about safety, Lt. Johnson went through the 110 Tweed Street door, which is the closest to the building's "knox box."[2] He tested the system, and reset it, to ensure that the system worked properly because the last recorded inspection with the City was performed in 2019. Lt. Johnson obtained Mr. Amesbury's contact information and left the building. Mr. Amesbury does not have any evidence that Fire Marshal Goldstein was at his building and/or entered his building.[3]

Brian Amesbury emailed Fire Chief Sisson, Mayor Grebien, and others questioning the bases for the PFD going to his father's building. Based on the information provided from Fire Marshal Goldstein, Lt. Johnson, and Ms. Pacheco, Fire Chief Sisson emailed him back that the fire department went to the building to see if it was still occupied, if the fire alarm was operational because the fire alarm testing report for the property had not been sent in since 2018, and to get contact information because the box connection fee bill had been returned unopened. Lt. Johnson spoke to a few occupants of the building to tell them he was going to test the fire alarm. Lieutenant Usher, a fire prevention officer, followed up with

---

alleges that Fire Marshal Goldstein said he would investigate the situation but never did.

[2] A "knox box" is a locked metal box attached to the outside of a building that contains keys for emergency personnel to access a property.

[3] Neither Mr. Amesbury nor his son were present. There were security cameras in the building, but those cameras were replaced two years later and none of the video footage from this period was saved.

Mr. Amesbury to tell him that their fire alarm panel was out of inspection, and he needed to call the PFD. Mr. Amesbury did not call the Department.

After the PFD went to the building in June, and after Mr. Amesbury received Lt. Johnson's report, Fire Marshal Goldstein determined that further action was required so he attempted to contact Mr. Amesbury several times. He emailed Mr. Amesbury that the PFD, along with representatives from the State Fire Marshal's Office, would be visiting the building for a complete fire alarm and life safety inspection. ECF No. 124-1 at 90-91. A few days later, Mr. Amesbury emailed Mayor Grebien complaining about the PFD going to his building. He also responded to Fire Marshal Goldstein that "you are never to contact me or my son Brian again," "never step foot on my property," and that "[he] will be filing a Federal lawsuit against [Goldstein] and all involved." *Id.* Mayor Grebien responded stating that the claims and allegations will be investigated, and a response will be forthcoming. *Id.* at 95-96.

Mr. Amesbury did not allow access to his building, so Fire Marshal Goldstein sent him a letter requesting an inspection at 110 Tweed Street to check for code compliance. *Id.* at 98-99. He contacted State Fire Marshal Investigator Manning for assistance related to inspecting the building in early August. Investigator Manning contacted Mr. Amesbury to request an inspection of his property. Mr. Amesbury immediately declined. Investigator Manning again emailed him confirming that the reason for the inspection was to assess the fire safety features of the entire property.

5

Two days later, Mr. Amesbury responded via email repeating that no inspection was required.

Considering the information received from City officials and his own correspondence with Mr. Amesbury where he would not agree to a scheduled inspection, Investigator Manning drafted and filed an Administrative Inspection Search Warrant Application and Affidavit before a Magistrate Judge. Investigator Manning cited R.I. Gen. Laws § 23-28.2-20 in the Affidavit, which "grants the State Fire Marshal…the authority to conduct inspections of all buildings regulated by the Fire Safety Code within the state." ECF No. 122-16. The Magistrate issued an administrative search warrant, which outlined the scope of the search to search for "[e]vidence of Fire Code violations and compliance to the Fire Code…" *Id.*

On August 19, 2021, Pawtucket and State officials, along with Pawtucket Police, entered the premises to conduct an inspection under the administrative warrant. Investigator Manning did not conduct an inspection that day; his role was limited to acting "as law enforcement[,] basically security for the inspectors who were doing their inspection." ECF No. 122-18 at 14:7-10; *see id.* at 40:5- 7. During that inspection, Pawtucket officials documented a series of violations and sent the September Violation Letter to Mr. Amesbury. ECF No. 122-21.

Mr. Amesbury's son Brian Amesbury refuted the violations cited in the Letter via email. Investigator Manning responded that he had the right to an appeal and provided an email address for the Administrative Assistant at the Board of Appeal

6

and the Fire Safety Code Board of Appeal and Review's website.  Mr. Amesbury did not appeal.

Mr. Amesbury also did not address the violations and so Fire Marshal Goldstein informed him in November that, "[b]ecause [he] failed to avail [him]self to any of [the above options], and the building remains noncompliant with the Fire Code, pursuant to RIGL § 23-28.2-20.1(b), the Notice of Violation has automatically become a COMPLIANCE ORDER."  ECF No. 124-1 at 146.  Because of his continued non-compliance, Mr. Amesbury was charged with 30 counts in violation of R.I. Gen. Laws § 23-28.3-9, initially brought in the Rhode Island District Court.  Mr. Amesbury's criminal case remains pending in the Rhode Island Superior Court.

Mr. Amesbury filed this suit and another similar suit, *Amesbury v. Burnes, et al.*, 22-cv-255-JJM-LDA ("*Amesbury 4*"), where he argues that several of these defendants violated his rights by issuing the September Violation Letter after the August 2021 investigation.

## II.  STANDARD OF REVIEW

The legal standard is well-settled: the Court must grant summary judgment if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  A fact is "material" if it might affect the outcome of the suit;

7

a dispute is "genuine" if a reasonable jury could find for the non-moving party. *Id.* at 248. A party must also be entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). When making a summary judgment determination, the Court must review the entire record and consider the facts and inferences in the light most favorable to the non-moving party. *Cont'l Cas. Co. v. Canadian Univ. Ins.*, 924 F.2d 370, 373 (1st Cir. 1991).

Summary judgment is a "drastic remedy" because it deprives the parties of their Seventh Amendment right to have their case tried by a jury. *Colman v. Faucher*, 128 F. Supp. 3d 487, 490 (D.R.I. 2015). It also serves as an important check on the parties: the nonmovant may not rely on "conclusory allegations, improbable inferences, acrimonious invective, or rank speculation," but must produce "specific facts" to support their claims or defenses. *Theidon v. Harvard Univ.*, 948 F.3d 477, 494 (1st Cir. 2020) (citations and internal quotation marks omitted).

### III. DISCUSSION

This is Mr. Amesbury's eighth filing in this federal court arising from his business' interactions with city and state fire code officials. The Court has reviewed all of Mr. Amesbury's previous lawsuits,[4] including his lengthy complaints and its own Orders on each motion filed, in considering the motions currently before it. There

---

[4] *See Amesbury v. Burnes*, No. 22-cv-255-JJM-LDA; *Amesbury v. Sisson, et al.*, 21-cv-409-JJM-LDA; *Amesbury v. City of Pawtucket, et al.*, 20-cv-348-JJM-PAS; *Amesbury v. Doe*, 20-cv-077-WES-PAS; *Amesbury v. City of Pawtucket, et al.*, 19-cv-651-JJM-PAS; *Amesbury v. City of Pawtucket, et al.*, 19-cv-342-JJM-LDA; *Amesbury v. City of Pawtucket, et al.*, 19-cv-082-JJM-LDA. His son, Brian Amesbury, filed another case, *Amesbury v. Manning et al.*, C.A. No. 24-257-JJM-LDA, alleging constitutional violations based on the same interactions.

is substantial overlap. Rather than addressing each Motion for Summary Judgment in turn, the Court will analyze the legal principles on which it bases its decision to dismiss the bulk of Mr. Amesbury's complaint–res judicata, *Younger* abstention, and qualified immunity–and then consider the substance of the remaining two claims.[5]

### A.    City Defendants' and Paul Manning's Motions for Summary Judgment

#### 1.    Res Judicata and *Younger* Abstention

Eleven claims, 1, 2, 3, 4, 7, 8, 9, 10, 11, 12, and 13, against various City Defendants and Investigator Manning allege violations of Mr. Amesbury's Fourth, Fifth, and Fourteenth Amendment rights because individuals from the PFD required installation and testing of a Radio Master Box, they entered his building in the course of their investigations into his compliance with state and local fire codes, and compiled violations into the September 2021 Violation Letter, which ended with him being criminally charged. Defendants argue that res judicata bars these claims because the Court has dealt with these very issues before in *Amesbury 2*, 2019 WL 4306392, at *3 (D.R.I. Sept. 11, 2019), *Amesbury 3*, and *Amesbury 4*, 2022 WL 18457303, at 2-3 (D.R.I. Dec. 21, 2022), *aff'd*, No. 23-1077, 2024 WL 3490779 (1st Cir. Apr. 22, 2024). The Court agrees.

The doctrine of res judicata bars parties from relitigating issues that were raised or could have been raised in a previous action. *Aunyx Corp. v. Canon U.S.A.,*

---

[5] The Court considers the substance of the two remaining claims, Claims 5 and 6, even though it believes that they are covered by res judicata because they are claims that could have been raised in a previous action, but Mr. Amesbury failed to do so. *See Aunyx Corp. v. Canon U.S.A., Inc.*, 978 F.2d 3, 6 (1st Cir. 1992).

9

*Inc.*, 978 F.2d 3, 6 (1st Cir. 1992). To dismiss a case under res judicata, there must be "(1) a final judgment on the merits in an earlier suit, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two suits." *Caballero-Rivera v. Chase Manhattan Bank, N.A.*, 276 F.3d 85, 86 (1st Cir. 2002) (citation omitted). "Where all three elements are satisfied, the parties will be barred from adjudicating the new complaint." *Koolen v. Mortg. Elec. Registration Sys.*, 953 F. Supp. 2d 348, 351 (D.R.I. 2013).

The Court finds that res judicata bars these claims. The first element is satisfied because the Court dismissed *Amesbury 2, 3, and 4*. Next, to determine if the earlier and later claims are sufficiently identical, the Court considers whether they "derive from a common nucleus of operative fact." *Haag v. United States*, 589 F.3d 43, 46 (1st Cir. 2009) (quoting). Claims are identical so "'as long as the new complaint grows out of the same transaction or series of connected transactions as the old complaint.'" *Kale v. Combined Ins. Co. of Am.*, 924 F.2d 1161, 1166 (1st Cir. 1991). Similar to *Amesbury 4*, Mr. Amesbury's Claims 1 through 4, 7, 9, and 11 through 13 here are challenging the validity of the September 21, 2021 Violation Letter.[6] And like *Amesbury 2* and *3*, his Claims 8 and 10 challenge the City's

---

[6] These Defendants also move for summary judgment on these claims based on *Younger* abstention because Mr. Amesbury has a pending state criminal proceeding regarding the code violations detailed in the Violation Letter and if he is successful on any of these claims here, it would affect the state charges. *Younger v. Harris*, 401 U.S. 37, 43-44 (1971) (a federal court generally must abstain from interfering with ongoing state court criminal proceedings). The state court criminal case centers on violations noted in the September Violation Letter after the August 2021 search. In

requirement that he install a Radio Master Box and have it inspected.[7] The third element is satisfied because the parties are the same; the Pawtucket Defendants are named defendants in all lawsuits and Mr. Amesbury is also the plaintiff in both lawsuits. Therefore, Mr. Amesbury's Claims 1 through 4 and 7 through 13 against the Pawtucket Defendants and Paul Manning are barred by res judicata.

### 2. Qualified Immunity – Lt. Johnson[8]

---

arguing against applying the *Younger* abstention, Mr. Amesbury disputes the validity of the state charges still open against him, asserting that he did not violate the state statute involving sprinkler inspections. This is the very reason that this Court must abstain from acting in any way to interfere in a state criminal action. "The policy of equitable restraint expressed in *Younger v. Harris*, in short, is founded on the premise that ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights." *Kugler v. Helfant*, 421 U.S. 117, 124 (1975).

The Court previously found that *Amesbury 4*, a case on all fours with this one, meets all three factors and concluded that *Younger* abstention supports dismissing the claims. C.A. No. 22-cv-255-JJM-LDA, 2022 WL 18457303, at *3 (D.R.I. Dec. 21, 2022), *aff'd*, No. 23-1077, 2024 WL 3490779 (1st Cir. Apr. 22, 2024). In *Amesbury 4*, Mr. Amesbury argued that Fire Marshal Goldstein, Mayor Grebien, Pawtucket City Council President David Moran, and Paul Manning, as well as other Rhode Island State Fire Marshal employees violated his constitutional rights by issuing the Violation Letter.

Additionally, the Court also found that "there are many other reasons for granting the Defendants' request, including not stating a claim upon which relief can be granted for First or Fourteenth Amendments violations, res judicata (as this Court pointed out, this is Mr. Amesbury's seventh federal complaint, five of which the Court has already dismissed), and judicial and other absolute and qualified immunities." *Amesbury 4*, 2022 WL 18457303, at *3.

[7] Here, Mr. Amesbury tries to bring Claim 10 within the statute of limitations by linking the inspection aspect to the reference to the Radio Master Box in the September Violation Letter to no avail–even if that Claim were not time barred, it is barred by *Younger* as that letter is central to the state criminal action against him.

[8] The Court finds that all claims against Lt. Johnson based on his June entry into the building could have been brought in any of his other cases and so should be dismissed under res judicata. *See Aunyx Corp.*, 978 F.2d at 6. However, for the sake of completeness, the Court will review Mr. Amesbury's claims against him anew.

11

Mr. Amesbury claims that Lt. Johnson violated his Fourth Amendment rights because he used the knox box key to enter the property, searched it, and tested the fire alarm system in June 2021. Lt. Johnson counters that he did not violate the Fourth Amendment because he was acting within his statutory duties pursuant to R.I. General Laws § 23-37-1, which allows him to go into buildings under certain circumstances. He also argues that qualified immunity applies here.

"The doctrine of qualified immunity protects government officials from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *McDonald v. City of Bos.*, 334 F. Supp. 3d 429, 439-39 (D. Mass. 2018) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). To determine whether a defendant is entitled to qualified immunity, a court inquires "(1) whether the facts alleged or shown by a plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009). The second step involves two prongs: (1) the clarity of the law at the time of the alleged violation, and (2) whether, on the facts of the case, a reasonable defendant would have understood that his conduct violated a plaintiff's constitutional rights. *Id.*

Lt. Johnson went to Mr. Amesbury's building because of PFD concerns that bills were returned to the PFD as "undeliverable" and owner or inspection report from the box alarm company had not been received since 2018. He entered the building, tested and reset the system to ensure that it worked properly because the last

12

recorded inspection with the City was performed in 2019. Lt. Johnson spoke with other tenants, confirming occupancy, and obtained Mr. Amesbury's contact information and left the building. In this case, it was not clear to Lt. Johnson that he was violating Mr. Amesbury's clearly established Fourth Amendment rights by responding to the property in June in response to Fire Code violations and other safety concerns. *Vaill v. Franklin*, 722 A.2d 793, 794-95 (R.I. 1999).

In deciding whether Lt. Johnson would have understood that responding to the building concerned about occupancy and operating fire alarms violated Mr. Amesbury's constitutional rights, the Court considers whether the State's interest in enforcing the provisions of the State's Fire Code, was "a reasonable governmental interest." *Camara v. Mun. Court of San Francisco*, 387 U.S. 523, 529 (1967). There is no dispute that protection of public health and safety are reasonable government interests. The Court finds Lt. Johnson is protected by the doctrine of qualified immunity and the case against him is dismissed.

### 3.   Claims 5 and 6

Mr. Amesbury makes two additional claims under the Fifth Amendment that were not clearly made in previous cases–though he has made similar allegations of slander and Fire Marshal Goldstein's failure to act against tenants who he alleged were in violation of the law in other suits. Claim 5 alleges that Fire Marshal Goldstein slandered Mr. Amesbury when he called him a "slumlord" during the August search. ECF No. 23 at 27-28, ¶¶ 76-82. Fire Marshal Goldstein moves for summary judgment because, though he disputes that he called Mr. Amesbury a

13

"slumlord," slander alone does not constitute a constitutional deprivation. The Court will address these final two claims in turn.

To succeed in an action for slander or defamation under Rhode Island law, a plaintiff must prove: (1) the utterance of a false and defamatory statement about another; (2) an unprivileged publication to a third party; (3) fault amounting to at least negligence; and (4) damages. *Healey v. New England Newspapers, Inc.*, 555 A.2d 321, 324 (R.I. 1989). The Court agrees that Mr. Amesbury does not present evidence of any harm or damages; a due process claim cannot rest solely on reputational harm or damages that predictably flow from such reputational harm. *See Mead v. Indep. Ass'n*, 684 F.3d 226, 233 (1st Cir. 2012) (citing *Paul v. Davis*, 424 U.S. 693, 701–02 (1976) (mere defamation by a state actor does not violate constitutional rights)). Therefore, the Court dismisses Claim 5.

Mr. Amesbury alleges in Claim 6 that his Fifth Amendment rights were violated when Fire Marshal Goldstein failed to investigate his tenant who was illegally living in his commercial space. He alleges that evicting the tenant cost him $10,000. Fire Marshal Goldstein moves for summary judgment, arguing that there was no physical or regulatory taking because nothing that he or any of the Pawtucket Defendants did prevented him from using his property.

The record is not clear how Mr. Amesbury connects the property inspections, investigation, and ultimate September Violation Letter to his complaint to Fire Marshal Goldstein about an illegal resident tenant. The Court agrees with the City, however, in its assertion that there is no evidence that their actions denied him "all

14

economically beneficial or productive use" of his property. *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015-16 (1992). The Court dismisses Claim 6 as a matter of law.

In sum, the Court grants Pawtucket Defendants' and Paul Manning's Motions for Summary Judgment. ECF Nos. 121, 123.

### B. Mr. Amesbury's Motion for Summary Judgment

Mr. Amesbury also moves for summary judgment, arguing that the violations found in the September Violation Letter are fraudulent. His summary judgment memorandum is essentially his defense to the violations in the September Violation Letter for which he was criminally charged. He addresses each violation–an approach that would have been appropriate on appeal to the Fire Safety Code Board of Appeal and Review–and asks the Court to resolve his objections to each violation. Investigator Manning notified him of his right to appeal the report, including providing him with contact information for the Board of Appeal and referring him to the Fire Safety Code Board of Appeal and Review's website. It is undisputed that he chose not to appeal. These violations are the subject of his state criminal case that is still pending so the Court cannot weigh in on the basis for these open charges per *Younger*. *See Amesbury 4* (dismissing similar claims based on *Younger*). Therefore, because the Court has rendered final judgment on these claims, dismissing them under *Younger*, Mr. Amesbury's claims are barred by res judicata, and he is not entitled to summary judgment. The Court DENIES his Motion for Summary Judgment. ECF No. 125.

15

### C. Additional Motions

The parties filed a flurry of additional motions post-summary judgment. Mr. Amesbury filed a Motion to Clarify (ECF No. 152), a Motion to Amend his Opposition to Investigator Manning's Motion for Summary Judgment and Statement of Disputed Facts (ECF No. 155), and a Motion to Amend his Opposition to the Pawtucket Defendants' Motion for Summary Judgment and Statement of Disputed Facts (ECF No. 154) after the deadlines for briefing had passed. Investigator Manning and Pawtucket Defendants move to strike the amended filings. ECF Nos. 148; 151. In light of the Court's decision on all Defendants' Motions for Summary Judgment, the Motion to Clarify and Motions to Strike are denied as moot. ECF Nos. 148, 151, 152, 154, 155.

Mr. Amesbury also filed a Motion to Reopen Discovery, pointing to a news story identifying a controversy within the PFD. ECF No. 138. He seeks text messages between PFD employees. *Id.* All Defendants oppose this motion, arguing that they produced text message in compliance with Mr. Amesbury's requests, discovery has been closed for almost a year, and summary judgment motions are complete.

The Court considers "whether the reason given for needing more time has force" and "whether further discovery is likely to lead anywhere productive." *United States v. Sayer*, 450 F.3d 82, 90 (1st Cir. 2006) (declining to reopen discovery where the motion came after discovery had been closed for over five weeks, and summary judgment motion practice was underway). Mr. Amesbury has no evidence that any of these texts relate whatsoever to the facts of his case. He cannot state that the

16

texters are even involved in his case or that the controversy reported on the news relates to him or his building. Reopening discovery will not "lead anywhere productive" but only to further delay. *Id.* The Court DENIES Mr. Amesbury's Motion to Reopen Discovery. ECF No. 138.

## IV. CONCLUSION

The Court DENIES Mr. Amesbury's Motion for Summary Judgment. ECF No. 125. The Court GRANTS the Pawtucket Defendants' Motion for Summary Judgment. ECF No. 123. The Court GRANTS Paul Manning's Motion for Summary Judgment. ECF No. 121. All other motions are DENIED AS MOOT. ECF Nos. 138, 148, 151, 152, 154, and 155.

Judgment will enter for all the Defendants on all of Mr. Amesbury's claims.

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

June 30, 2025